IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIAMOND RESORTS HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 17-03208-CV-S-BP |
| | ) | |
| DIAMOND VIEW SOCIAL HOUSE, LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

On December 13, 2018, Plaintiff, Diamond Resort Holdings, LLC, and Defendants, Diamond View Social House, LLC, Show Me Sunshine Properties, LLC, Resort Installation Systems, Inc., Geoffrey L. Shaver, and Brenda K. Shaver (collectively "Parties"), filed a joint stipulation for entry of a permanent injunction and partial stay.[1] The motion, (Doc. 169), is **GRANTED**.[2] The case as it relates to the Parties is **STAYED** for sixty days. The Court issues a permanent injunction as follows:

## STIPULATED PERMANENT INJUNCTION ORDER

THIS CAUSE is before the Court on this Joint Stipulation by and between Plaintiff, Diamond Resorts Holdings, LLC ("Diamond"), and certain Defendants/Counterclaim Plaintiffs, Diamond View Social House, LLC, Show Me Sunshine Properties, LLC, Resort Installation Systems, Inc., Geoffrey L. Shaver, and Brenda K. Shaver (collectively, the "Certain Defendants") (together with Diamond, the "Parties"), for the entry of a Stipulated Permanent Injunction Order (the "Permanent Injunction"). The Parties consent to the entry of this Permanent Injunction on the

---

[1] This Order does not relate to Defendants Last Resort Fee, LLC, or Jeffrey H. Shaver.

[2] Consistent with this Order, the motions for a preliminary injunction, (Docs. 90, 101) are moot.

terms below written and jointly stipulate as follows:

## I. APPLICABLE LAW

Rule 65, Federal Rules of Civil Procedure, requires every order granting an injunction to "(a) state the reasons why it issued; (b) state its terms specifically; and (c) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Here, and to the extent the Parties have stipulated to the entry of this Permanent Injunction, the Court can assume that this Permanent Injunction is fair and equitable and the terms constitute an appropriate remedy.

## II. ADMISSIONS AND WAIVERS

1. Certain Defendants admit all jurisdictional allegations of the First Amended Complaint and Request for Injunctive Relief, and expressly waive:

   a. Any further procedural steps;

   b. Any requirement that this Permanent Injunction contain any findings of fact or conclusions of law; and

   c. Any right to seek judicial review or otherwise challenge the validity of this Permanent Injunction.

## III. BACKGROUND

1. By way of background, Diamond is engaged in the business of timeshare sales, exchange, marketing, and development activities throughout the United States and worldwide.

2. Through the course of this business, Diamond has developed a portfolio of intellectual property assets, including United States Trademark Registration Numbers 2,411,329; 2,432,190; 3,746,815; 4,067,822; 4,101,489; 4,361,959; 4,505,500; and 4,805,164 (collectively, the "Diamond Marks"), which Diamond uses to market, advertise and operate its business.

3. Diamond Resorts Corporation, a subsidiary of Diamond, owns real property in Taney County, Missouri located at 1 Fall Creek Drive, Branson, Missouri 65616 (the "Diamond Parcel"), which is home to a Diamond Resorts® sales office and timeshare resort known as The Suites at Fall Creek (the "Resort").

4. Certain Defendants Show Me Sunshine Properties, LLC and Resort Installation Systems, Inc., each own real property adjacent to the Diamond Parcel.

5. On the real property owned by Show Me Sunshine Properties, LLC, Certain Defendant Diamond View Social House, LLC, operated a restaurant that was previously named the "Diamond View Social House" and displayed signage bearing that name (the "Restaurant").[3]

6. On the real property owned by Resort Installation Systems, Inc., Defendant Last Resort Fee, LLC, formerly operated a business.

7. Last Resort Fee, LLC and Jeffrey H. Shaver are not among the Certain Defendants and are not subject to this Permanent Injunction.

8. Certain Defendant Geoffrey L. Shaver is an adult resident of Okaloosa County, Florida.

9. Certain Defendant Brenda K. Shaver is an adult resident of Okaloosa County, Florida.

10. Diamond alleged that the individual Defendants, Jeffrey H. Shaver, Geoffrey L. Shaver, and Brenda K. Shaver, are related family members who exert varying degrees of control or ownership over the business Defendants, Diamond View Social House, LLC, Last Resort Fee, LLC, Show Me Sunshine Properties, LLC, and Resort Installation Systems, Inc.

11. Diamond brought this action against Defendants based on an alleged conspiracy

---

[3] The Restaurant's name has subsequently been changed and is currently named the "Star Bar Grill."

among them to harass Diamond into purchasing the real property owned by Show Me Sunshine Properties, LLC, and Resort Installation Systems, Inc., adjacent to the Diamond Parcel.

12. As part of this alleged conspiracy, Diamond alleged that Defendants erected a large LED billboard on the real property owned by Resort Installation System, Inc., to target Diamond customers and visitors at the Resort in order to discourage them from purchasing timeshare ownership interests from Diamond. Diamond alleged that these billboard advertisements allegedly utilize the protected Diamond Marks.

13. In addition, Diamond alleged that Last Resort Fee, LLC, operates a "timeshare exit business" using the Restaurant as a venue or front for inducing timeshare owners to breach their contracts with timeshare companies such as Diamond.

14. Diamond also alleged that Diamond View Social House, LLC, created the Restaurant, selected the Restaurant's name, designed and constructed the Restaurant, and otherwise conducted its business for the improper purpose of intentionally creating confusion among the consuming public as to the source, origin, affiliation, and/or sponsorship of the Restaurant. For example, the Restaurant is located in a building that closely resembles the architecture of the Resort's buildings and is painted to match, identically, the Resort's buildings.

15. Diamond brought claims of trademark infringement, unfair competition, and tortious interference against Defendants, seeking damages and injunctive relief to enjoin Defendants' use of the Diamond Marks or any confusingly similar designation, and for other relief. *See generally* First Amended Complaint and Request for Injunctive Relief (Dkt. No. 77).

16. Defendants denied Diamond's allegations.

17. Diamond View Social House, LLC filed counterclaims against Diamond for tortious interference with business relationships and slander. Diamond View Social House, LLC

4

Case 6:17-cv-03208-BP   Document 171   Filed 12/19/18   Page 4 of 9

alleged that Diamond, through its agents and employees, published false and injurious statements to third parties. *See* Dkt. No. 81.

18. The remaining Defendants filed counterclaims against Diamond for abuse of process wherein those Defendants alleged that Diamond was pursuing the instant litigation for the improper purpose of attempting to acquire the adjacent real estate parcels for a below-market price. *See* Dkt. No. 81.

19. Diamond denied Defendants' allegations.

20. The Parties expressly and jointly consent to and stipulate to the entry of the Permanent Injunction against Certain Defendants.

## IV. **PERMANENT INJUNCTION ORDER**

Thus, pursuant to Rule 65(d)(1)(A), Federal Rules of Civil Procedure, it is hereby **ORDERED AND ADJUDGED** that Certain Defendants, their agents, successors, assigns, representatives, affiliates, those acting at their direction and/or those acting in concert with them, shall be **PERMANENTLY ENJOINED AND RESTRAINED** as follows:

1. Beginning no later than sixty (60) days from the date of entry of this Permanent Injunction (or earlier, if stated otherwise below), from using yellow or a color similar to yellow as the "field color" on the Restaurant; whereas the term "field color" means the portion of the exterior that covers the majority of the visible surface of the building (and that is currently yellow on the Restaurant), and the term "yellow or a color similar to yellow" shall encompass all colors between orange and green on the standard spectrum of visible light; nor may Certain Defendants reduce the current surface area of the "field color" of the Restaurant.

2. Effective immediately as of the date of this Permanent Injunction, from:

   a. using the Diamond Marks, or any confusingly similar designation, along or

5

Case 6:17-cv-03208-BP   Document 171   Filed 12/19/18   Page 5 of 9

in combination with any other words or designations, to market, advertise or identify any business owned, controlled or operated by Certain Defendants;

b.  including the word "diamond" in the name of the Restaurant located at 222 Fall Creek Drive, Branson, Missouri 65616; however, Diamond View Social House, LLC, need not change its corporate name which, due to licensure and other issues, may continue to utilize the word "diamond" so long as Diamond View Social House, LLC, operates the Restaurant (and any other future businesses, regardless of the type and kind) as a "doing business as' or "d/b/a" entity and will not use its corporate name for any purpose whatsoever other than as a corporate name;

c.  creating, using, possessing, or distributing any advertising or marketing materials that contain the name "DIAMOND VIEW SOCIAL HOUSE" or that otherwise promote the Restaurant or any business through the use of the word "diamond".

d.  advertising the name "DIAMOND VIEW SOCIAL HOUSE" on any electronic billboard;

e.  Certain Defendants themselves or directing others in engaging in any advertising in any form and via any manner whatsoever, that disparages Diamond, its parent, sister, affiliate and subsidiary entities, and/or the timeshare industry in general (Similarly, Diamond will not disparage Certain Defendants, nor will they direct any other person/entity to do so);

f.  operating any business, now or in the future, that includes the word

"diamond" in its name;

g. operating any business that provides timeshare cancellation or exit services;

h. advertising any business utilizing the word "diamond" in its name through any advertising medium, including, without limitation, on the Internet or through any electronic means, including, without limitation, social media, such as Facebook, Twitter, Snapchat, or the like;

i. Contacting, advertising, soliciting or inducing any owner (including, without limitation, any owner, member, renters, and/or guests (whether or not members, or those staying at Diamond properties who have not yet purchased a Diamond timeshare interest)) of any timeshare interest, regardless of the form, in (i) any Diamond resort or property, (ii) any resort acquired or developed by Diamond or any of its subsidiaries after the entry of this Order, or (iii) any points-based timeshare ownership program denominated as a Diamond points-based program (collectively, "Diamond Timeshare Owners") regarding cancellation, resale or transfer of their timeshare contracts, memberships, and/or interests;

j. Contacting and having any communication, written or otherwise, with any Diamond Customer[4] for any purpose related to cancellation or transfer of their timeshare interest;

k. Telling Diamond Timeshare Owners to stop paying their loans and/or maintenance fees and/or other debts to Diamond;

---

[4] For purposes of this injunction, the term 'Diamond Customer' shall mean any individual who is a Diamond Timeshare Owner and/or an individual who is a customer, renter or a patron of a Diamond property.

7

l. Soliciting or inducing Diamond Timeshare Owners to breach their timeshare contracts;

m. Contacting or having any communication, written or otherwise, with any Diamond Employee[5] for any purpose related to obtaining Diamond Customer information, or for any purpose related to timeshare cancellation or transfer;

n. Representing or implying to Diamond Customers or potential customers that Certain Defendants, including their agents, successors, assigns, representatives, affiliates, those acting at their direction and/or those acting in concert with them, have a potential buyer for the Diamond Customers' timeshare interests; and

o. Receiving or paying any further fees or compensation with respect to the cancellation or transfer of any Diamond Customer timeshare interest, and/or otherwise referring any Diamond Customer to any other person or entity for the purpose of the cancellation or transfer of any Diamond Customer timeshare interest.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that:

1. Certain Defendants, their agents, successors, assigns, representatives, affiliates, those acting at their direction and/or those acting in concert with them are notified that any act in violation of any of the terms hereof may be considered and prosecuted as contempt of this Court.

2. The Court shall retain jurisdiction over the Parties and this case for purposes of

---

[5] For purposes of this injunction, the term 'Diamond Employee' shall mean any employee of Diamond. This includes any employee of a Diamond property, the corporate offices or Diamond or any of the outside consultants, affiliates, and/or related entities that may have access to Diamond Customers' information.

construing, interpreting, implementing, and enforcing the terms of this Permanent Injunction, including but not limited to the imposition of sanctions and civil fines as a result of any violation of the terms contained herein.

**IT IS SO ORDERED.**

DATE: December 19, 2018

 /s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT